Opinion issued June 23, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00356-CR

———————————

Trenique Knapper,
Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 184th District Court

Harris
County, Texas



Trial Court Case No. 1108525

 



 

MEMORANDUM OPINION

Appellant, Trenique Knapper, was charged
by indictment with murder.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as charged and
assessed punishment at 15 years’ confinement. 
In one issue, appellant argues the trial court abused its discretion in
excluding testimonial evidence from a police officer regarding (1) how to
safely carry a weapon and (2) when the officer is permitted to use deadly
force.

We affirm.

                                                                                                                                                                
Background

For some period of time before the date of the offense,
appellant had been in a dating relationship with another woman, Amber
Pryor.  Appellant was not dating Pryor as
of the date of the offense, but she was living at Pryor’s house along with
Pryor’s mother, nephew, and niece.  Before
she had a relationship with appellant, Pryor had also had a sexual relationship
with Walter Hutchison.

On March 16, 2007, Hutchison called Pryor, asking to come
over.  During Hutchison’s visit, appellant
learned he was at the house.  A short
while later, appellant arrived at the house, crashing her car into one of the
cars on the driveway.  Appellant raced
into the house and became confrontational with Hutchison.  At some point during the confrontation,
appellant pulled out a knife from a kitchen drawer, and Hutchison drew a
handgun from his backpack.  The residents
of the house intervened, taking the knife from appellant and pushing Hutchison
out of the house.

Pryor closed the front door and locked it.  She turned around and saw appellant holding a
shotgun.  Appellant told Pryor to move
away from the door, but Pryor refused. 
Appellant then left the house through the garage.

Appellant and Hutchison approached each other in the
driveway and exchanged shots.  Hutchison
was hit by the shotgun blast and collapsed. 
Appellant then approached Hutchison and fired additional shots at
Hutchison with a pistol.

After the exchange of shots, Pryor came out of the
house.  She saw Hutchison collapsed at
the end of the driveway and appellant pacing on the driveway.  Appellant said, “I killed him. I killed him.”  Pryor went up to Hutchison and touched him,
but Hutchison never moved.

Police arrived a short time later, and appellant was taken
into custody.  Appellant was charged with
murder both under the allegation that she intentionally and knowingly caused
Hutchison’s death and under the allegation that she intended to cause Hutchison
serious bodily injury and caused his death by intentionally and knowingly
committing an act clearly dangerous to human life by shooting Hutchison with a firearm.[2]  Appellant raised the affirmative defense of
self-defense at trial.[3]

During the trial, the State called Officer S. Stewart to
testify.  Officer Stewart was the first
officer on the scene.  He was the officer
who took appellant into custody.  During
cross-examination, the following exchange occurred:

[Defense Counsel:] In your training I imagine you
were trained in the use of deadly force?

A.      Yes,
ma’am, I was.

Q.      And I
would imagine you carry a handgun as a peace officer of the State of Texas?

A.      Yes,
ma’am.

Q.      Do you
carry your weapon off duty?

A.      Yes,
ma’am, I do.

Q.      Do you
always carry it for the most part?

A.      90
percent of the time I do.

Q.      How do
you carry it?

[The State]: Object to relevance, referring to off
duty carrying of a weapon.

THE COURT: Sustained.

[Defense Counsel]: Judge, it’s relevant to the
case.

THE COURT: Come up, please.

(At the Bench. On the record.)

[Defense Counsel]: It’s only about three questions.
I anticipate the State is going to argue that the complainants carrying a
handgun was --

THE COURT: What?

[Defense Counsel]: The complainant’s carrying of a
handgun was lawful in some respect.

THE COURT: Carrying of a handgun?

[Defense Counsel]: Yes.

THE COURT: How does that relate how this officer
carries his gun?

[Defense Counsel]: Because he’s the expert witness.
I wanted to ask him how he legally carries a handgun in contrast to how the
complainant was carrying a handgun.

THE COURT: Sustained. I don’t see how he carries
his gun --

[Defense Counsel]: How the complainant carried his
gun would be very relevant. I have no other way to establish -- I guess I could
call someone back in my defense case, how a handgun is properly carried, but --

THE COURT: In terms of safety how the complainant
was carrying --

[Defense Counsel]: It’s clear the complainant was
carrying a handgun in a back pack. I believe that’s relevant.

THE COURT: You may ask how were you taught, what is
the standard procedure of carrying a gun or something like that. But how he
carries his gun is really not relevant.

[Defense Counsel]: I’m trying to make -- it was
only going to be two questions. I’ll ask it that way.

THE COURT: You may ask what is the standard way a
person should carry a gun safely or something like that. That’s it.

(Open court. Defendant and jury present.)

Q.      (BY [Defense
Counsel]) Officer Stewart, what is the way that you’re trained as a safe way to
carry a handgun on your person?

A.      Off
duty I carry it in my holster, off duty holster I have with me. And carry my
firearm in that holster when it’s on me.

Q.      And
that’s how you’ve been trained to carry it in a safe manner?

A.      Yes.

. . . .

Q.      Are
you also trained, Officer Stewart, when you’re trained in use of deadly force,
when deadly force is appropriate?

A.      Yes.

Q.      And in
your training, Officer Stewart, when deadly force is appropriate, is there a
time when your use of deadly force would come to an end?

[The State]: Objection, calls for speculation.

THE COURT: Sustained.

Q.      (BY [Defense
Counsel]) In your training, Officer Stewart, have you had training in the use
of deadly force?

A.      We
have to go through firearms qualification.

THE COURT: Come to the Bench, please.

(At the Bench. On the record.)

THE COURT: He’s not a legal expert in self-defense.
What are you trying to find out?

[Defense Counsel]: I’m not asking him any legal
questions. I’m asking in his firearms training as a police officer when deadly
force is appropriate to be used.

THE COURT: That’s confusing to the jury. They’re
supposed to follow the law, not what he was trained. It may be different. That’s
a different kind of training. Might be confusing to the jury.

[Defense Counsel]: Judge, it’s material to my
defense.

THE COURT: I know. I will give you latitude on
that, but when a police officer is allowed to use deadly force involves a lot
of factors that are irrelevant to this case. I don’t want to get the jury
confused.

[Defense Counsel]: I guess my position would be --
I’m not trying to confuse the jury. That’s material to my defense.

THE COURT: Then you’re going to ask?

[Defense Counsel]: I was only going to ask him in
his training when does the ability to use deadly force come to an end. That’s
all I was going to ask.

THE COURT: Even if the State agreed to you doing
that, I wouldn’t allow it. What’s your position?

[The State]: I still think that falls, Your Honor,
in the Court’s purview of issuing them the law.

THE COURT: That’s just not fair to the jury. Don’t
go into that.

[Defense Counsel]: I just--

THE COURT: Your objection is sustained.

[Defense Counsel]: I won’t excuse this officer
then. And maybe on the Court’s break make an offer. It’s that material to my
defense.

THE COURT: There are other ways of establishing
that besides having the witness testify to some law that’s issue to the case.

[Defense Counsel]: The only witnesses that I can
get that evidence in through are police officers. I don’t have any other
ability to present that to the jury.

THE COURT: When this officer is allowed to use
deadly force is an entirely different case. I’m sorry. We’re just not going
there.

[Defense Counsel]: I’ll put -- I’ll make the offer
of proof at some point during the trial.

THE COURT: I suggest we do it -- have this witness
remain and you can ask them then outside the presence of the jury.

Later that day, appellant made her offer of proof as
follows:

THE COURT: What would your proffer be?

[Defense Counsel]: I anticipate that Officer
Stewart or any other officer would testify that in their training in the use of
deadly force as a Houston Police Officer that they are permitted to use deadly
force until the threat has been removed.

          And
that’s what I would have asked him.

THE COURT: The Court’s ruling is the same. Don’t go
into that.

                                                                                                                                          
Exclusion of Testimony

In her sole issue, appellant argues the trial court abused
its discretion by excluding testimony of Officer Stewart concerning how to
safely carry a weapon and under what conditions he is allowed to use deadly
force.

A.              
Standard of Review

We review the trial court’s decision to admit or exclude
evidence, as well as its decision as to whether the probative value of evidence
was substantially outweighed by the danger of unfair prejudice, under an abuse
of discretion standard.  Martinez v. State, 327 S.W.3d 727, 736
(Tex. Crim. App. 2010).  An abuse of
discretion occurs when the trial court acts without reference to guiding rules
or principles or acts arbitrarily or unreasonably. Galliford v. State, 101 S.W.3d 600, 604 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d).  The trial
court does not abuse its discretion unless its determination lies outside the
zone of reasonable disagreement.  Martinez, 327 S.W.3d at 736.

B.              
Analysis

Generally, all relevant evidence is admissible, and
irrelevant evidence is not admissible.  Tex. R. Evid. 402.  “‘Relevant evidence’ means evidence having
any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.”  Tex. R. Evid. 401.  Whether facts are “of consequence to the
determination of the action” is framed largely by the elements of the charged
offense and the defenses raised.  See Etheridge v. State, 903 S.W.2d 1, 14
(Tex. Crim. App. 1994), superseded by
statute on other grounds as recognized in Storey v. State, 2101 WL 3901416
(Tex. Crim. App. Oct. 6, 2010); Burks v.
State, 795 S.W.2d 913, 914 (Tex. App.—Amarillo 1990, writ ref’d).  Even if evidence is relevant, it can still be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury.  Tex.
R. Evid. 403.  Relevant evidence
can also be excluded by considerations of undue delay or needless presentation
of cumulative evidence.  Id. 


As it applies to appellant, a person commits murder if
she:

(1)     intentionally
or knowingly causes the death of an individual; [or]

(2)     intends
to cause serious bodily injury and commits an act clearly dangerous to human
life that causes the death of an individual[.]

Tex. Penal
Code Ann. § 19.02(b)(1), (2) (Vernon 2011).  

Appellant raised the justification of self-defense at
trial.  At the time of the commission of
the offense, appellant was justified in using deadly force against another:

(1)     if
[s]he would be justified in using force against the other under Section 9.31;

(2)     if a
reasonable person in the actor’s situation would not have retreated; and

(3)     when
and to the degree [s]he reasonably believes the deadly force is immediately necessary:

(A)    to
protect [her]self against the other’s use or attempted use of unlawful deadly
force; or

(B)     to
prevent the other’s imminent commission of aggravated kidnapping, murder,
sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1,
1995 Tex. Gen. Laws 2141, 2141 (amended
2007) (current version at Tex. Penal
Code Ann. § 9.32 (Vernon 2011)). 
Section 9.31, as it applied at the time of the commission of the
offense, provided, “Except as provided in Subsection (b), a person is justified
in using force against another when and to the degree he reasonably believes
the force is immediately necessary to protect himself against the other’s use
or attempted use of unlawful force.”  Act
of May 12, 1995, 74th Leg., R.S., ch. 190, § 1, 1995 Tex. Gen. Laws 1919, 1919
(amended 2007) (current version at Tex.
Penal Code Ann. § 9.31 (Vernon 2011)).

Appellant’s first complaint concerns testimony regarding
how to safely carry a handgun.  Appellant
explained that she wanted to elicit the testimony because the evidence showed
that Hutchison was originally carrying his handgun in his backpack.  There is no evidence, though, that the
handgun being in the backpack—regardless of whether this was a safe manner to
carry a weapon—had any relevance to the commission of the offense or to
appellant’s claim of self defense.  Appellant
does not advance any argument on appeal explaining why the evidence should be
considered relevant.  If evidence is not
relevant, then it is not admissible.  Tex. R. Evid. 402.  We hold the trial court did not abuse its
discretion in excluding testimony concerning how to safely carry a handgun.

Appellant’s second complaint concerns testimony regarding
under what circumstances Officer Stewart is allowed to use deadly force.  Appellant argues, “Had the jury been
presented with expert testimony on the subject of reasonable use of deadly
force[,] they would have been able to consider Appellant’s actions within this
prism and determined that her use of deadly force was reasonable under the
circumstances.”

As the State points out, the law concerning when a peace
officer can use deadly force is different from the law concerning when someone other
than a peace officer can use deadly force. 
Compare Tex. Penal Code Ann. § 9.51(c)
(Vernon 2011) (concerning when peace officer may use deadly force) with Act of May 16, 1995, 74th Leg.,
R.S., ch. 235, §1, 1995 Tex. Gen. Laws 2141,
2141 (amended 2007)
(concerning when person who is not acting as peace office can use deadly
force).  Even if testimony concerning when
a police officer can use deadly force were relevant to the case, the trial
court would not have abused its discretion to exclude the evidence based on the
danger that the evidence would have confused or misled the jury.  See
Tex. R. Evid. 403.  We hold the trial court did not abuse its
discretion in excluding testimony concerning when Officer Stewart was permitted
to use deadly force.

We overrule appellant’s sole issue.




 

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Keyes, Higley, and Baker.[4]

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 19.02(b)
(Vernon 2011).





[2]           See Tex. Penal Code Ann. § 19.02(b)(1),
(2).

 





[3]           See Act of May 12, 1995, 74th Leg., R.S., ch. 190, § 1, 1995 Tex.
Gen. Laws 1919, 1919 (amended 2007) (current version at Tex. Penal Code Ann. §
9.31 (Vernon 2011)); Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995
Tex. Gen. Laws 2141, 2141 (amended 2007)
(current version at Tex. Penal Code Ann. § 9.32 (Vernon 2011)).





[4]           The Honorable Caroline Baker, judge of the 295th District
Court of Harris County, participating by assignment.